[Civ. No. 31442. Second Dist., Div. One. Aug. 15, 1967.]

AMERICAN CITY BANK, Plaintiff and Respondent, v. ROBERT ZETLEN et al., Defendants and Appellants.

Harold Rubins for Defendants and Appellants.

Gerald Lipsky for Plaintiff and Respondent.

FOURT, J.—Robert and Jacqueline Zetlen appeal from a summary judgment granted on plaintiff's motion in an action to recover the balance of money due and owing on a promissory note.

American City Bank alleged in its complaint that on July 20, 1964, it loaned the Zetlens $122,850; that the entire amount, together with interest, was due and payable on or before May 15, 1965; that the promissory note had been secured by a deed of trust, but the bank had executed a full reconveyance before filing the complaint; that the unpaid balance at the time of filing the complaint was $6,296.84, plus attorney's fees.

The Zetlens, by unverified answer, generally denied the indebtedness and, as an affirmative defense, alleged that the deed of trust referred to in the complaint was a purchase money security instrument, hence the bank's claim for a deficiency was barred by Code of Civil Procedure, section 580b. The bank thereupon filed a motion for summary judgment, supported by the declaration of a bank officer, Joseph J. Digange, to which were attached copies of various loan documents and agreements which were executed by the Zetlens at the time the loan was made. The Zetlens filed no declarations in opposition to this motion nor did they challenge the genuineness or due execution of any of these documents. The Zetlens' motion to amend their answer to raise additional affirmative defenses, which are considered in this appeal, was denied by the trial court on the ground that the amendment did not state facts sufficient to constitute defenses to the bank's claim.

Appellants contend that the motion for summary judgment should have been denied because the documents disclosed a triable issue of fact as to whether the loan was completely satisfied by the reconveyance; the loan agreement did not give the bank the right to reconvey its trust deed, apply the proceeds of the take-out financing and then sue for a deficiency; and the bank's right to a deficiency is barred by Code of Civil Procedure, section 726. An examination of the record discloses

no dispute between the parties regarding any material issue of fact; all questions presented to the trial court were purely questions of law and the judgment was proper under the circumstances.

The bank, on July 20, 1964, entered into a loan agreement with the Zetlens wherein the sum of $122,850 was to be loaned to them for a period of approximately 10 months to enable them to purchase certain commercial property. Appellants executed a promissory note agreeing to repay the entire sum on or before May 15, 1965, with monthly installments of interest beginning August 20, 1964, and providing that in the event interest installments were not paid when due the bank could elect to consider the principal sum immediately due and payable. The documents constituting the transaction are appended to the Digange declaration, including particularly the promissory note, the deed of trust, the bank's loan agreement specifying in elaborate detail the terms and conditions upon which the loan was made, an assignment executed by the Zetlens wherein they assigned to the bank as additional security all of their rights under a take-out commitment from Gibraltar Savings and Loan (hereinafter called Gibraltar), and an ''Irrevocable Power of Attorney'' authorizing the bank to act as the Zetlens' agent in exercising the take-out commitment. These documents were executed concurrently and must be construed together as part of a single transaction.

Gibraltar in its take-out commitment agreed to lend the Zetlens the sum of $136,500 between April 15 and June 15, 1965, on the security of the commercial property which the Zetlens acquired with the proceeds of the bank loan. The Zetlens defaulted in the payment of monthly installments of interest due on the bank loan and finally in May of 1965 the bank elected to consider the entire obligation due and payable on account of appellants' default and chose to exercise its rights with respect to the take-out commitment from Gibraltar. Using the irrevocable power of attorney granted to it in connection with the loan agreement, the bank reconveyed its security interest in the commercial property so that a new first trust deed thereon could be conveyed to Gibraltar as security for its loan. The net proceeds of the Gibraltar loan were thereupon paid to the bank and credited to the Zetlens' account. leaving an unpaid balance of $6,296.84 on their loan. The trial court entered judgment for this sum according to the prayer, together with interest from the date of maturity and attorney fees as provided in the instrument.

Appellants emphasize that the printed trust deed form which they executed in favor of the bank provides that the trustee may, upon receipt of a request for full reconveyance, rely upon the truthfulness of the recitals therein contained to reconvey the property and destroy the note and trust deed. The printed form request for reconveyance utilized by the bank, in turn, contains a recital that "All sums secured by . . . [the deed of trust] have been fully paid and satisfied; . . ." Appellants contend that these provisions considered together create the inference that when the bank thus obtained the net proceeds of the Gibraltar loan commitment and applied those funds against the Zetlens' indebtedness, this was intended and understood by the parties to constitute full satisfaction of their obligation and thus a triable issue of fact is raised by the documents. Appellants, however, filed no declaration claiming that this point was discussed either when the original agreement was signed, or when the take-out commitment was exercised upon their default; they merely assert that the conflict in the provisions of the written instruments raises the issue. This contention is without merit.

██ It is well settled that the resolution of conflicting provisions in written instruments, absent competent extrinsic evidence to aid in their construction, constitutes a legal rather than a factual issue. The rights and duties of the parties herein are governed strictly by the written instruments reflecting their transaction and all pertinent documents were submitted to the court which was qualified to interpret their impact as a matter of law. ██ "The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] ██ Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect. [Citations.] ██ It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. . . .

"[C]ases have said that even in the absence of extrinsic evidence the trial court's interpretation of a written instrument must be accepted 'if such interpretation is reasonable, or if [it] is one of two or more reasonable constructions of the instrument' [citations], or if it is 'equally tenable' with the

appellate court's interpretation [citations]." (*Parsons* v. *Bristol Dev. Co.*, 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

 In the instant case the trial court was justified in concluding that the receipt and application of the Gibraltar loan proceeds was not intended to satisfy fully the Zetlens' obligation and in disregarding any inferences to the contrary which might have been raised by the printed form recitals. When appellants executed the original loan agreement and associated documents, it must be presumed that they were aware that the express written terms thereof entitled the bank in the event of their default, to exercise the take-out commitment on their behalf, apply the proceeds to reduce their indebtedness, and hold them for any deficiency that might remain thereafter. Obviously, in order to exercise the Gibraltar loan commitment, the bank would be forced to reconvey its security interest in the real property in order that Gibraltar might receive that security in its stead pursuant to the terms of its commitment. The specially drafted provisions of the loan agreement thus control the recitals of the printed forms. Where written and printed provisions are in conflict with one another, it is elemental that the written provisions control and to the degree that the form provisions are absolutely repugnant they must be disregarded. (Civ. Code, § 1651.)

 Appellants, however, contend that the bank was not authorized by the loan agreement to sue for a deficiency after liquidating and applying the proceeds of the Gibraltar loan commitment. Paragraph 9 (c) of the loan agreement provides in part that the bank "Without affecting the liability of . . . [appellants] . . . for the payment of any indebtedness incurred . . . [to the bank] may . . . enforce . . . any . . . security . . . or apply any collateral . . . in such manner, order or sequence as . . . [the bank], in its sole discretion, may determine; . . ." Not only does the loan agreement thus contemplate precisely such an event as herein occurred, but it is obvious from the documentation of the transaction that the Gibraltar loan proceeds of $136,500 less $13,650 loan fee could not exceed the principal amount of the bank's $122,850 loan, and the net Gibraltar proceeds might be further reduced by incidental expenses of that loan transaction which were to be paid by the borrower. On the other hand, the Zetlens' obligation to repay $122,850 principal to the bank was subject to additional charges for interest and whatever expenses the

bank might incur in enforcing its rights. A deficiency, therefore, was mathematically certain to occur in the event of a default in the payment of interest charges such as occurred in this instance. Under the circumstances it must be presumed that the likelihood of a deficiency was within the contemplation of the parties who expressly contracted and reserved to the bank the right to sue for a deficiency.

■ Finally, appellants contend that the instant case falls within that limited category of situations wherein the debtor is protected from a deficiency judgment as a matter of public policy. None of the provisions of Code of Civil Procedure, section 580, prohibiting deficiency judgments in certain real property security transactions, is applicable to the case at bar. Deficiency judgments are therein limited by formula (Code Civ. Proc., § 580a), and are prohibited following the exercise of a private power of sale (Code Civ. Proc., § 580d) or the foreclosure of a purchase money obligation against owner-occupied residential property (Code Civ. Proc., § 580b). The subject property is identified as commercial real estate and the bank elected not to exercise its powers under the trust deed. The familiar single-action statute (Code Civ. Proc., § 726) similarly fails to protect appellants since it merely prohibits multiple legal actions based on the same transaction, and by its terms refers only to a debt secured by a mortgage at the time suit is brought. (*J. I. Case Threshing Machine Co.* v. *Copren Bros.*, 32 Cal.App. 194 [162 P. 647]; *Nelson* v. *Bank of America*, 76 Cal.App.2d 501 [173 P.2d 322]; *Willys of Marin Co.* v. *Pierce*, 140 Cal.App.2d 826 [296 P.2d 25].) In the instant case the bank pursued the self-executing extrajudicial remedies granted it in the loan agreement and gave its security prior to suit in order to provide Gibraltar with the senior lien required in its commitment letter.

The trial court correctly granted the motion for a summary judgment.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 11, 1967.