779 F.2d 175
 23 ERC 1905, 16 Envtl. L. Rep. 20,353
 PENNBANK and First Seneca Bank, Appellants,
v.
The UNITED STATES of America, and its agencies, the
Environmental Protection Agency and the Farmers
Home Administration of the United States
Department of Agriculture.
 No. 85-3066.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 3, 1985.
Decided Dec. 20, 1985.
Rehearing Denied Jan. 31, 1986.
 
 Lawrence A. Demase (argued), Richard DiSalle, Rose, Schmidt, Chapman, Duff & Hasley, John V. Anderson, Kirkpatrick & Lockhart, Pittsburgh, Pa., for appellants.
 Roger B. Clegg (argued), Anthony J. Steinmeyer, Dept. of Justice, Civ. Div., Washington, D.C., for U.S., et al.
 Before WEIS, MANSMANN, Circuit Judges and RE, Chief Judge*.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this appeal from an order granting summary judgment in favor of the defendant government agencies, we must decide whether this action based upon alleged negligence in failing to inspect and discover defects in the construction of a municipal sewer project is barred by an exception to the Federal Tort Claims Act. Because we find that the "discretionary function exception" set forth in 28 U.S.C. Sec. 2680(a) bars the instant action, we affirm.
 
 I.
 
 2
 In 1974, the Crawford County Townships of North and South Shenango, Pennsylvania created the North and South Shenango Joint Municipal Authority ("Authority") to provide sanitary sewer service to the residents of those townships and to prevent, reduce or eliminate pollution of the navigable waters of the United States in compliance with the Clean Water Act. 33 U.S.C. Secs. 1251 et seq.
 
 
 3
 Because the project was expected to cost millions of dollars, the Authority turned to various federal and state agencies in order to finance the sanitary sewer system. The Authority submitted plans and specifications to the Environmental Protection Agency ("EPA"), the Farmers Home Administration ("FmHA") and the Pennsylvania Department of Environmental Resources ("DER"). The EPA awarded a grant of $8,600,000 and the FmHA approved a long term loan in the amount of $3,200,000 which was contingent upon satisfactory completion of the project. The DER also awarded a grant.
 
 
 4
 During the construction phase it became necessary for the Authority to secure interim financing due to restrictions contained in FmHA regulations which prohibited the agency from disbursing federal loan funds before project completion. To that end, the Authority obtained a three-year loan from Pennbank in the amount of $6,000,000. First Seneca later entered into an agreement with Pennbank to secure an interest in the loan. The banks subsequently agreed to a one year extension for repayment.
 
 
 5
 In 1979 a citizens group brought an action against the Authority for violation of the Clean Water Act, alleging that the newly constructed sewage system was faulty. The district court entered judgment in favor of the citizens, granting their request for injunctive relief to enforce compliance with the provisions of the Clean Water Act. Pymatuning Water Shed Citizens for a Hygienic Environment v. Eaton, 506 F.Supp. 902 (W.D.Pa.-Erie 1980).
 
 
 6
 As a predicate, the district court found that the new sewer system was discharging wastewater into Lake Pymatuning and into the Shenango River; the court ultimately directed the Authority to propose a schedule for the abatement of the discharge of the untreated sewage. The court also found that the system was poorly constructed. On appeal, we affirmed. 644 F.2d 995 (3d Cir.1981).
 
 
 7
 As a result of the citizens' suit, its appeal to this court, an investigation by the FmHA and a DER order restricting the use of the sewage system, the FmHA refused to close the loans or obligate additional funds for the project. By letter dated April 3, 1981 the FmHA notified the Authority of this decision, indicating that it was not permitted to aid in the pollution of the environment.[1] After this notification, the banks were successful in seizing the Authority's operating funds, but this amount ($259,000) fell short of the outstanding loans.
 
 
 8
 In subsequent meetings between the Authority, the banks and the agencies, the FmHA adhered to its position of refusing to close the loan and the EPA ultimately refused to make its final grant payment.
 
 
 9
 In February of 1983, the banks filed administrative claims against the agencies pursuant to the requirements of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Secs. 2671-80. After the denial of these claims, the banks commenced the instant action, alleging that the agencies were negligent in failing to discover the defects in the construction of the sewage system during agency inspections to insure the continued eligibility for federal funding. The banks seek repayment of the entire unpaid principal ($3,674,129.49), plus accrued interest.
 
 
 10
 After the filing of their answer, defendants interposed a motion to dismiss or for summary judgment in the alternative based upon the following grounds: (1) expiration of the statute of limitations,[2] (2) sovereign immunity, (3) the "discretionary function exception" to the FTCA, (4) the "misrepresentation exception" to the FTCA, (5) the "interference with contract exception" to the FTCA, (6) the complaint fails to state a claim for which relief can be granted and (7) a lack of subject matter jurisdiction.
 
 
 11
 Because the district court considered matters outside the pleadings, it appropriately treated the motion as one for summary judgment. The district court granted the agencies' motion for summary judgment, basing its decision on the "misrepresentation exception" to the FTCA, 28 U.S.C. Sec. 2680(h).[3]
 
 In so doing, the district court concluded:
 
 12
 For the Agencies to inspect the sewage system, or be entitled to inspect it, and fail to notify the Authority of the true, defective condition of the construction is to misrepresent it as acceptable. Agency communication is thus essential to the Banks' claim. We have found no possible Agency duties to the Banks other than the duty to notify the Authority of any funding changes. This includes notice about the discovery of significant construction defects, which intimately affects scheduled funding. The Agencies never provided this notice. The Banks' claim thus can only be construed as one for negligent misrepresentation, which is barred by 28 U.S.C. Sec. 2680(h).
 
 
 13
 Pennbank v. U.S.A., 599 F.Supp. 1573, 1581-82 (W.D.Pa.-Erie 1985). Since the district court found that the misrepresentation exception was dispositive, it did not consider the other grounds raised by the defendants.
 
 
 14
 On appeal to this court, the plaintiffs contend: (1) that there is a genuine issue of fact with respect to whether a duty was owed to them; (2) that once the lower court found the existence of a limited duty (to inspect and monitor the project to insure the continued eligibility of federal funds), it erred in finding that duty not actionable under the FTCA; and (3) although not considered by the district court, that the "discretionary function exception" of the FTCA does not bar the instant claim.
 
 
 15
 Defendants argue to this court: (1) that the district court properly granted summary judgment in their favor based on the "misrepresentation exception" to the FTCA; (2) that defendants do not owe plaintiffs a duty actionable under Pennsylvania law; and in any event, that either the "discretionary function" or the "interference with contract" exceptions to the FTCA also serve as a bar to the instant claim.
 
 
 16
 While we agree with the district court that an exception to the FTCA bars the instant claim, under the facts of this case, we prefer to utilize the "discretionary function exception" as the basis for affirming, and do so without determining whether the "misrepresentation exception" would also be a bar to the instant claim.
 
 II.
 
 17
 Jurisdiction below was based upon 28 U.S.C. Secs. 1331 and 1346(b). Our jurisdiction is predicated upon 28 U.S.C. Sec. 1291. Since the issues involved are ones of law, our standard of review of this order granting summary judgment is plenary. See, e.g., Sames v. Gable, 732 F.2d 49 (3d Cir.1984).
 
 III.
 A.
 
 18
 As a general matter, the United States enjoys sovereign immunity. The Federal Tort Claims Act, 28 U.S.C. Secs. 2671-80, however, provides a limited waiver of sovereign immunity, making the United States liable for certain torts "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. Sec. 2674. The FTCA is subject to certain statutory exceptions which are contained in 28 U.S.C. Sec. 2680. Of particular interest to this lawsuit is 28 U.S.C. Sec. 2680(a) which excepts the waiver of sovereign immunity for
 
 
 19
 Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
 
 
 20
 (Emphasis added.)
 
 
 21
 The case of United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) ("Varig Airlines") gave the Supreme Court the occasion to construe the "discretionary function exception" of the FTCA.
 
 
 22
 In Varig Airlines, the cause of action concerned a fire which broke out aboard an airplane during flight. Although the pilot was able to accomplish an emergency landing, most of the passengers died of asphyxiation and the aircraft was destroyed by fire. The airline sued the United States under the FTCA, seeking property damages for the destruction of the airplane. In a separate action (which was consolidated by the district court), the families and personal representatives of the decedents brought wrongful death claims against the United States also under the FTCA. The claims were based upon the alleged negligence of the Federal Aviation Agency ("FAA") in inspecting the aircraft and in certifying it for use in commercial aviation.
 
 
 23
 On appeal to the Supreme Court, Varig Airlines was consolidated with United States v. Scottish Insurance Co., 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) which also involved an in-flight fire and agency certification. Scottish Insurance was comprised of separate lawsuits, both for property damage and personal injury, which were consolidated in the district court. Plaintiffs claimed that the FAA was negligent in issuing a certificate permitting a defectively installed cabin heater, which certification allegedly did not comply with FAA standards.
 
 
 24
 In Varig Airlines, the Supreme Court noted the characterization of the "discretionary function exception" by the House Committee on the Judiciary as "highly important" and one that is
 
 
 25
 designed to preclude application of the act to a claim based upon an alleged abuse of discretionary authority by a regulatory or licensing agency ... It is neither desired nor intended that ... the legality of regulations, or the propriety of a discretionary administrative act should be tested through a damage suit for tort. The same holds true of other administrative action not of a regulatory nature, such as the expenditure of Federal funds, the execution of a Federal project, and the like.
 
 
 26
 Id. at 2763, quoting Hearings on H.R. 5373 and H.R. 6463 before the House Committee on the Judiciary, 77th Cong., 2d Sess., 28, 33 (1942) (emphasis added).
 
 
 27
 The Court, acknowledging the difficulty in defining "with precision every contour of the exception," set forth some guidelines:
 
 
 28
 First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exemption applies in a given case.... Thus, the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee--whatever his or her rank--are of the nature and quality that Congress intended to shield from tort liability.
 
 
 29
 Second, whatever else the discretionary function exception may include, it was plainly intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals.... Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy ... By fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took 'steps to protect the government from liability that would seriously handicap government operations.'
 
 
 30
 Id. at 2765 (footnote and citation omitted). The Court ultimately held that the "discretionary function exception" applied.
 
 
 31
 In General Public Utilities Corp. v. U.S., 745 F.2d 239 (3d Cir.1984) ("General Public Utilities"), we examined the "discretionary function exception" in light of Varig Airlines and similarly concluded that under the circumstances of that case, the exception barred the claims. We noted that Varig Airlines and its reaffirmation of an earlier Supreme Court case, Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), have clarified some of the difficulties in assessing the applicability of the "discretionary function exception." We further noted as did the Supreme Court in Dalehite, id. at 33, 73 S.Ct. at 966, that whether the government acted in a negligent manner is not relevant to this sovereign immunity consideration.[4]
 
 
 32
 The activity at issue in General Public Utilities was that of the Nuclear Regulatory Commission ("NRC") in connection with the Three Mile Island nuclear facility. Specifically, it was alleged that the NRC failed to exercise due care in discovering, analyzing and warning of safety hazards and that the NRC negligently approved Three Mile Island construction and design plans.
 
 
 33
 After examining the failure to warn allegations while keeping mindful of the guidance of Varig Airlines, we found that conduct to be discretionary, rather than ministerial and precisely the type described as the regulating of the conduct of private individuals which is to be excluded from judicial "second-guessing." Similarly, with respect to the claims regarding the NRC approval of the plans, we concluded that the exception was a bar to those claims as the licensing function of an agency is clearly within its discretionary functions.
 
 B.
 
 34
 Utilizing the guidelines set forth by Varig Airlines and General Public Utilities, we turn now to the particular circumstances of this case.
 
 
 35
 The complaint filed by Pennbank and First Seneca alleges in essence that the EPA and the FmHA were negligent in supervising and inspecting the construction of the sewer project. The plaintiffs also claim that the agencies failed to use due care in determining whether the project conformed to relevant regulations and standards.
 
 
 36
 As previously noted, however, the question of whether the agencies acted in a negligent manner is not relevant to our inquiry concerning the appropriateness of the "discretionary function exception." Therefore, we will not consider whether there was a duty owed or whether such duty was breached. Rather, our focus is on the nature of the conduct.
 
 
 37
 All of the allegations of governmental conduct or activity at issue ultimately reduce to the respective decisions by the FmHA and the EPA not to close the loan and not to award the final grant payment. Although each agency has statutory authority for the award of federal funds and has promulgated regulations pursuant thereto,[5] the processes and standards utilized by the agencies in awarding the funds originally and in ultimately withdrawing the funds clearly involve the exercise of discretion. Moreover, although we have not considered whether the agencies owed a duty to inspect, we agree with the district court that the inspections were to inure to the benefit of the agencies in assisting the grant administrators in the performance of their statutorily mandated duties.
 
 
 38
 The district court correctly found that the government inspectors examined construction plans and monitored progress, but "only as a safeguard against wasteful, negligent or illicit use of government money." 599 F.Supp., at 1580. Neither in the agency agreements with the Authority nor in the banks' loan agreements to the Authority is found the responsibility of the government to monitor the construction itself. Rather, the government conduct at issue is exclusively to "oversee ... the [federal] money being spent on the work." Id.
 
 
 39
 Given the factors set forth in Varig Airlines, we hold that the agencies' conduct at issue is clearly barred by the "discretionary function exception". We note that the EPA and the FmHA, in making grants and loans to the Authority, respectively, were expending federal funds. Given the legislative history quoted in Varig Airlines and set forth above, we find that the activity here is precisely that which the "discretionary function exemption" was designed to remove from judicial scrutiny.
 
 
 40
 In focusing on the conduct, which is entirely related to the expenditure of federal funds, we conclude that this is the type of activity which Congress intended to shield from tort liability. Certainly, a decision regarding the allocation of federal funds is a discretionary function which goes to the heart of governmental activity. Given Congress' intention, it would be wholly inappropriate for the courts to permit judicial "second-guessing" of discretionary decisions such as this.
 
 IV.
 
 41
 We find that the government activity here, i.e., the expenditure of federal funds for the sewer project in North and South Shenango Townships, is clearly a discretionary governmental activity. Accordingly, we find that this cause of action is barred by the "discretionary function exception" of 28 U.S.C. Sec. 2680(a). We will affirm the district court.
 
 
 
 *
 The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 Although not specifically referenced in the April 3, 1981 letter, 7 U.S.C. Sec. 1926(a)(10) precludes the FmHA from spending money on projects which pollute the environment
 
 
 [2]
 With respect to the statute of limitations issue the district court, utilizing the presumption which posits facts in favor of the non-moving parties, dismissed the argument. We need not examine this issue further, however, as it has not been raised on appeal
 
 
 [3]
 28 U.S.C. Sec. 2680(h) provides an exception to the waiver of sovereign immunity for "[a]ny claim arising out of ... misrepresentation ..."
 
 
 [4]
 In this connection, we note that plaintiffs here, as those in Varig Airlines and General Public, asserted theories of negligence, based in part upon the "Good Samaritan" doctrine set forth in Secs. 323 and 324A of the Restatement (Second) of Torts. Since actual negligence is not part of our consideration in the determination of whether the "discretionary function exception" is available to the government, we will not consider the arguments further
 
 
 [5]
 The EPA obtains its grant-making authority from the Clean Water Act. See 33 U.S.C. Sec. 1281. Moreover, applicants for grants for the construction of water treatment plants are required to "submit to the Administrator for his approval, plans, specifications, and estimates for each proposed project for the construction of treatment works ..."
 The FmHA derives its general authority to make and insure loans from 7 U.S.C. Sec. 1921 et seq.