UNITED STATES of America,
Plaintiff–Appellee,

v.

Rodger L. MCAFEE Defendant–
Appellant.

No. 00–17334.
D.C. No. CV–96–05720–AWI.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2002.

Decided Aug. 13, 2002.

Before LAY,* THOMPSON and TALLMAN, Circuit Judges.

## MEMORANDUM**

Rodger L. McAfee appeals from summary judgment in the Government's foreclosure action against his property in El Nido, California. The district court found that the Government's suit did not violate California's "one action rule" and that McAfee was not entitled to equitable estoppel or an offset for negligence. We affirm.

### *Facts*

McAfee and his wife purchased 1480 acres of California farmland in 1976. In the following months, the area suffered severe drought and the strata under McAfee's land shifted. The six wells on his property failed. To continue farming operations, McAfee determined to recondition the existing wells and drill three additional wells. McAfee initially sought private financing but was denied six times due to "questionable water availability."

McAfee turned to the United States Farmers Home Administration (FmHA) for an emergency farm loan. Local FmHA officials denied his initial request, noting the property's lack of a proven production history and anticipated low harvest size and high water costs. On administrative appeal, McAfee's application was approved. McAfee received five loans totaling $2,075,980. The loans were secured by McAfee's El Nido and Kerman properties. McAfee used $1.24 million to pay off existing debt and approximately $180,000 for his drilling project.

McAfee approached The Water Development Company which agreed to perform the work. Water Development was unable to recondition the existing wells, however, and Water Development, McAfee, and the FmHA agreed that nine new wells would have to be dug. McAfee determined, in light of his need for financing, that the new wells should drilled to 600 feet.[1] When the first well was dug, however, it was discovered that water was unavailable at 600 feet. Water Development opined that water would be available below 600 feet or at 420 feet, after a test well at the lesser depth produced 1300 gallons/minute, an amount sufficient to satisfy McAfee's needs. The local FmHA official recommended the lesser depth in light of the limited funding available. McAfee agreed. Water Development drilled the wells between November 27, 1978, and February 18, 1979. In January 1979, McAfee suffered an emotional breakdown and was uninvolved with the drilling process thereafter.

McAfee's wells failed to produce sufficient water. His farming operation failed.

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. It was generally agreed by the parties that drilling to 1000 feet would have likely doubled the cost of the project.

McAfee failed to make principal or interest payments after August 1979. In June 1996, the FmHA sued to foreclose on McAfee's security, including the El Nido land and farm related personalty. The FmHA did not seek a deficiency judgment against McAfee personally. The district court granted summary judgment to the Government. McAfee timely appealed. We review de novo the district court's grant of summary judgment. *Shalit v. Coppe,* 182 F.3d 1124, 1126–27 (9th Cir. 1999).

## I.  One–Action Rule

In 1983, McAfee's children sued McAfee for wrongfully encumbering the Kerman property, which had been held in trust for the children at the time McAfee pledged the property as collateral. The United States intervened to protect its interest in the Kerman property. Ultimately, the children settled with the Government. The children gave the Government a $500,000 promissory note secured by the Kerman property. The Government set up a new loan account for the children and credited McAfee's loan account in the amount of $568,266; the fair market value of the property at the time. McAfee asserts the Government's intervention constitutes an "action," and the settlement a "setoff" against his debt, such that the Government's decision not to institute foreclosure proceedings at that time precludes foreclosure now under California's "one-action rule."

The California Code of Civil Procedure provides: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property." Cal. Civ. Pro. Code § 726 (2002). In effect, this rule requires a creditor whose debt is secured by a mortgage deed on real property to proceed against the security before seeking a personal judgment against the debtor. *In re DiSalvo,* 219 F.3d 1035, 1038 (9th Cir.2000). Moreover, a creditor who seeks a setoff of the mortgaged debt without first proceeding against the property in a foreclosure action loses its lien on the property held as security. *Sec. Pac. Nat'l Bank v. Wozab,* 51 Cal.3d 991, 997, 275 Cal.Rptr. 201, 800 P.2d 557 (1990). The purpose of the rule is to "prevent multiplicity of actions, to compel exhaustion of all security before entry of a deficiency judgment and to require the debtor to be credited with the fair market value of the secured property before being subjected to personal liability." *Walker v. Community Bank,* 10 Cal.3d 729, 736, 111 Cal.Rptr. 897, 518 P.2d 329 (1974).

■ The district court rejected McAfee's argument. We agree. The text of the statute was not satisfied. The Government's intervention in the existing suit was not an "action" by the Government "for the recovery of a debt." In seeking to protect its interests against McAfee's children, the Government was not proceeding against McAfee with the purpose of prosecuting its rights against him. *Wozab,* 51 Cal.3d at 998, 275 Cal.Rptr. 201, 800 P.2d 557. In addition, the settlement between McAfee's children and the Government was not a "setoff" against McAfee. A setoff is an *"extrajudicial* appropriation of the debtor's assets before foreclosure." *Id.* at 999, 275 Cal.Rptr. 201, 800 P.2d 557 (citing *McKean v. German–Am. Sav. Bank,* 118 Cal. 334, 340–41, 50 P. 656 (1897)) (emphasis in original). In this case, there was no "extrajudicial appropriation;" rather, there was a settlement of a judicial action. Nor did the Government "appropriate" the debtor's assets; rather the Government reached an agreement to extinguish the *children's* rights against the security.

The Government also did not violate the purpose of the law. This is the first and only action by the Government against the property; there has been no multiplicity of actions. Likewise, the Government seeks no default judgment against McAfee. *Only* the security will be exhausted, and there is no risk of McAfee suffering personal liability.ʹ The "one action rule" does not bar these foreclosure proceedings.

## II. Equitable Estoppel

In the alternative, McAfee asserts he is entitled to equitable estoppel against the Government's foreclosure action.

■ Initially, the Government argues McAfee is barred from asserting equitable estoppel on the ground that public money is effectively at stake in this foreclosure action. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 427, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). McAfee disagrees. He asserts his estoppel argument is "defensive," whereas *Richmond* only prohibits the "offensive" use of equitable estoppel against the Government in cases involving public funds. We recognized this distinction between offensive and defensive estoppel in *United States v. Hatcher*, 922 F.2d 1402, 1410 (9th Cir.1991). There we recognized that *Richmond* applies where at issue is the "payment of money from the Public Treasury." *Id.* We held, however, that mere "negative impact on the public fisc . . . alone does not suffice to implicate the rule announced in *Richmond*." *Id.* In doing so, we distinguished *United States v. Fowler*, 913 F.2d 1382, 1385–86 (9th Cir. 1990), where we held that a party could not use equitable estoppel to prevent the Government from reclaiming wrongly dispersed public funds. We held in *Hatcher* that, absent that unique circumstance, a party is not barred from using equitable estoppel against the Government defensively, but may only invoke the doctrine if

he satisfies a two-pronged threshold test. 922 F.2d at 1410. Here, McAfee's use of equitable estoppel, if successful, certainly would have a significant negative impact on the public fisc. It would not, however, require a payment of money from the public treasury. Thus, McAfee is not barred from using equitable estoppel defensively. We turn, then, to consider whether he can satisfy the threshold requirements.

■ A claimant who seeks to estop the Government must satisfy two threshold showings before the court will engage in the traditional estoppel analysis. First, the claimant must show that the Government engaged in affirmative misconduct beyond mere negligence. *Watkins v. United States Army*, 875 F.2d 699, 707 (9th Cir.1989). Second, the claimant must show that the Government's affirmative misconduct will cause a serious injustice, and the public's interest will not suffer undue damage. *Id.* We hold McAfee cannot satisfy the threshold requirements.

### A. Affirmative Misconduct

McAfee asserts the Government engaged in affirmative misconduct by insisting on 420 foot wells when it was determined that water was unavailable at 600 feet. McAfee asserts local FmHA officials knew that 420 foot wells would provide insufficient water and recklessly spent loan funds on the project in order to cause his farm to fail. He relies primarily on two letters from Erwin Hofmann of the California FmHA office to support this claim. Hoffman expressed concern about maintaining funding sufficient to assure "acceptable well construction standards." McAfee argued to the district court that Hofmann's "concern[ ] about the construction specifications, [ ] could have included well depth."

The district court properly found this claim untenable. It was not apparent pri-

or to drilling the several wells to 420 feet that such wells would fail. A test well at 420 feet had produced 1300 gallons/minute. There certainly was a higher risk of failure at 420 feet rather than 1000 or more feet, but legitimate financial constraints precluded deeper wells. In any event, McAfee—who held himself out as knowledgeable concerning wells—was aware of the risks involved and agreed to drill to 420 feet based on the same information available to the Government. Hofmann's letters provide no evidence to the contrary; the letters were sent after drilling had started and, in any event, McAfee's argument that Hofmann's concerns "could have" included depth was mere speculation, not a reasonable inference drawn from evidence.

McAfee also implies that the Government's silent possession of the information and opinion in Hofmann's letters amounted to affirmative misconduct. The district court found that Hofmann's letters only "confirmed what was already known to all parties: that [there] was no guarantee of the well drilling project and that it was risky." We are not persuaded this reasoning was error in light of McAfee's statements that he was well versed in the well drilling process and the collaborative nature of the project planning.

### B. Serious Injustice Without Public Harm

There existed no clear evidence of "serious injustice" in light of the disastrous financial circumstances McAfee faced prior to the FmHA loan. On the verge of bankruptcy and the then-likely loss of his farm, McAfee used far more of his loan money to pay existing debts than he used to pursue his drilling project. Although that project failed, the FmHA loan allowed him to maintain ownership of his property nearly twenty years longer than would otherwise have been the case.

More important, however, is the fact that estopping the Government's foreclosure action would cause serious public harm. The Government notes that if estoppel is applied, it will have no recourse against McAfee's now $5 million debt to the public fisc. In *United States v. Omdahl*, 104 F.3d 1143, 1146 (9th Cir.1997), we found that the loss of $240,000 in principal in addition to interest would constitute an unacceptable public burden. Clearly, loss of over $2 million in principal must also be considered an undue burden. We agree with the district court; McAfee is not entitled to equitable estoppel.

### III.  Offset for Negligence

We also affirm the district court's decision to deny McAfee an offset for negligence under the discretionary function exception to the Federal Tort Claims Act. The Government is insulated from tort claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function ... whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (2002). Section 2680(a) mandates dismissal of a claim if "the challenged actions involve 'an element of judgment or choice.' " *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir.1995) (quoting *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). Specifically, a claim will be dismissed if: (1) no "federal statute, regulation, or policy *specifically prescribes* a course of action for an employee to follow," or (2) the government employee's decision is "grounded in social, economic, and political policy." *Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir.1996) (emphasis added) (internal citations omitted).

The local FmHA officials' conduct satisfies both criteria for discretionary ac-

tions. There is no statute, regulation, or policy that mandates specific conduct on the part of local FmHA officials. Although officials are required to provide supervision to borrowers if necessary to achieve the purposes of the loan and protect the Government's interest, *see* 7 C.F.R. § 1804.3(f) (1978), officials are given wide discretion in their exercise of that authority. *See* 7 U.S.C. § 1961(c) (1978) (Secretary of Agriculture should "conduct the emergency loan program ... in a manner that will foster and encourage the family farm system of agriculture."); 7 C.F.R. § 1804.3(f) (1978) (Borrower is responsible for "[p]lanning construction and land development and obtaining technical services in connection with plans, specifications, and cost estimates ... with such assistance from the County Supervisor as may be necessary for the County Supervisor to be sure that the development is properly planned."). Indeed, to the extent local officials are guided by directives to protect both the farmer's and the Government's financial interests, actions pursuant to those broad directives must also be considered "grounded in economic policy." *Cf. Williamson v. United States Dep't of Agric.,* 815 F.2d 368, 376 (5th Cir.1987); *Pennbank v. United States,* 779 F.2d 175, 180 (3d Cir.1985); *Ortiz v. United States,* 661 F.2d 826, 831 (10th Cir.1981). Consequently, McAfee is not entitled to any offset for alleged Government negligence.

Judgment AFFIRMED.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.